UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES JACOBSON, JR., et al.,<br><br>                 Plaintiffs,<br><br>v.<br><br>RAGNAR PETTERSSON, et al.,<br><br>                 Defendants. | No. CV6-1117 MJP<br><br>ORDER GRANTING DEFENDANT BROOKS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on a motion for summary judgment brought by Officer Les Brooks and the City of Bothell. (Dkt. No. 90). Plaintiffs have responded. (Dkt. No. 130). Having considered the parties' briefs, as well as all documents submitted in support thereof, the Court GRANTS Defendants' motion for summary judgment.

**BACKGROUND**

Plaintiff James Jacobson, an attorney licensed to practice law in the State of Washington, has sued numerous defendants for various alleged violations of law surrounding several unrelated incidents that occurred last summer. Mr. Jacobson has sued on behalf of himself and his two minor children and is proceeding pro se. In addition to the other defendants, Plaintiffs have sued the City of Bothell and Officer Les Brooks, alleging that the City and Officer Brooks violated Mr. Jacobson's federal constitutional rights when, on July 30, 2006, they responded to a 911 call at Mr. Jacobson's residence and subsequently arrested him.

Some of the facts surrounding the July 30 incident are not in dispute. On July 30, 2006, a tow truck operator attempted to repossess Mr. Jacobson's 2007 Cadillac Escalade. (Am. Compl. ¶ 80; Jolley Decl., Ex. B (Statement of John Peters)). Mr. Jacobson confronted the tow truck operator and disabled the tow truck so that his car could not be removed. (Jolley Decl., Ex. B; Jacobson Decl.

ORDER - 1

¶19). The tow truck operator — John Peters — called 911 and told the 911 operator that Mr. Jacobson had threatened him with a gun. (Jolley Decl., Ex. A (Police Report); see Am. Compl. ¶ 82). Police responded to the call, arrested Mr. Jacobson, and searched his house. (Jolley Decl., Ex. A; Am. Compl. ¶ 89, 122). During the search, police officers found one real gun and one fake gun. (Jolley Decl., Ex. A). Mr. Peters confirmed with the officers that Mr. Jacobson had brandished both weapons at him. (Id.).

The parties dispute what happened during the interaction between Mr. Jacobson and the tow-truck operator, John Peters. In a sworn statement made on July 30, Mr. Peters stated that while he was loading the Escalade on the tow truck, Mr. Jacobson appeared and pointed a black semi-automatic gun at him. (Jolley Decl., Ex. B). Mr. Peters stated that, while pointing the gun at him, Mr. Jacobson said "I have a round in the chamber and if you don't drop the car, I will shoot." (Id.). Mr. Peters walked down the street to call 911. (Id.). He stated that he "observed [Mr. Jacobson] clipping the valve stems of [his] dolly tires." (Id.). Mr. Peters stated that while he was waiting for police to arrive, Mr. Jacobson went in and out of the house, and at some point brandished what appeared to be a different gun. (Id.).

The only evidence Mr. Jacobson has proffered is his own declaration. In that declaration, he denies generally all of the assertions made in Defendants' motion. (Jacobson Decl. ¶ 5). He specifically states that he had a "verbal exchange" with the tow truck driver and that he "let the air out of two tires of a trolley (not part of the tow truck) in order to prevent the driver from leaving and to give the police time to arrive." (Id. ¶ 19). He also makes various assertions regarding his ownership and use of guns. He asserts that he (1) has never owned or been in possession of two guns; (2) has never stuck a real or fake gun in the face of anyone; (3) has never pointed a replica of a gun at anyone; (4) has never met John Peters; (5) has never stuck one or two guns in John Peters' face; and (6) has never held two guns at the same time. (Id. ¶¶ 8-12).

In addition to his false arrest claim, Mr. Jacobson also seems to be suing Officer Brooks for an unrelated incident involving Officer Brooks. In his Amended Complaint, Mr. Jacobson alleges, in

ORDER - 2

one paragraph, that Officer Brooks violated the civil rights of his son, JEJ, during an "illegal interview and citing of [JEJ]." (Am. Compl. ¶ 121). As Defendants explain in their motion and the accompanying exhibits, in March 2006, Officer Brooks investigated a report of indecent exposure at a local junior high school. During that investigation, Mr. Jacobson's son, JEJ, admitted (and others confirmed) that he had exposed himself to numerous classmates. (Jolley Decl., Exs. D-H). Officer Brooks forwarded the case to the Snohomish County Juvenile Prosecutors Office and the school notified Mr. Jacobson. (Id.).

Plaintiffs filed suit and alleged various constitutional, statutory, and common law claims against several defendants, including Officer Brooks and the City of Bothell. In their Amended Complaint, Plaintiffs state a cause of action under 42 U.S.C. § 1983, alleging violations of their Second, Fourth, Fifth, and Fourteenth Amendment rights. Plaintiffs also bring claims under 42 U.S.C. § 1985. And Plaintiffs allege various state law claims, including wrongful repossession, conversion, and trespass to chattels. Defendants have moved for summary judgment dismissal of all of Plaintiffs' claims against them. Plaintiffs oppose summary judgment and request that the Court enter a declaratory judgment against Defendants.

**DISCUSSION**

**I.    Standard on Motion for Summary Judgment**

This matter comes before the Court on Defendants' motion for summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden

shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

**II.     Declaratory Judgment**

Plaintiffs request that the Court "declare as fact" a number of assertions Plaintiffs believe are established by the fact that Defendants filed their motion. For example, Plaintiffs request that the Court declare that Defendants' motion was "submitted to the Court in accordance with the Official Policy of the City of Bothell" and that by submitting this motion, the "City of Bothell has waived any Municipal Liability it may have had a right to claim in this action." (Pls' Resp. at 2).

A response to a motion for summary judgment is not the proper place to request declaratory relief. The Court cannot find facts in the context of a motion for summary judgment. The Court therefore DENIES Plaintiffs' request for a declaratory judgment in this context.

**III.    Summary Judgment on Plaintiffs' § 1983 Claims**

**A.     Officer Brooks is entitled to qualified immunity**

Officer Brooks argues that the Court should dismiss Plaintiffs' § 1983 action against him because he is entitled to qualified immunity. The threshold question in any qualified immunity inquiry is whether, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation could be made out, the court must inquire whether the right was clearly established at the time the officer acted, and if so, whether the officer could have believed "reasonably but mistakenly" that his or her conduct did not violate a clearly established right. See id. at 201-02; Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th Cir. 2006).

ORDER - 4

### 1. Fourth Amendment — False Arrest

Officer Brooks asserts qualified immunity in response to Plaintiffs' claim that Officer Brooks violated Mr. Jacobson's Fourth Amendment rights by arresting Mr. Jacobson without probable cause. The Court must examine the facts pled in the light most favorable to Mr. Jacobson to determine if he has asserted a violation of the Fourth Amendment.

A warrantless arrest made without probable cause violates the Fourth Amendment. Probable cause exists when " 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" Hart v. Parks, 450 F.3d 1059, 1065-66 (9th Cir. 2006) (quoting Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964))). In this case, Defendants did not have a warrant to arrest Mr. Jacobson, but assert that Officer Brooks had probable cause to arrest Mr. Jacobson for malicious mischief or brandishing a weapon.

The statute governing unlawful display of a weapon provides in relevant part:

> It shall be unlawful for any person to carry, exhibit, display, or draw any firearm . . . or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

RCW 9.41.270. The statute governing malicious mischief provides in relevant part:

> (1) A person is guilty of malicious mischief in the third degree if he or she: (a) Knowingly and maliciously causes physical damage to the property of another, under circumstances not amounting to malicious mischief in the first or second degree. . .

RCW 9A.48.090.

Officer Brooks had probable cause to arrest Mr. Jacobson for violations of both of these statutes. The police report and statement of John Peters show that Mr. Peters told the 911 operator that Mr. Jacobson had pointed a gun at Mr. Peters and threatened to shoot him. (Jolley Decl., Ex. A & B). Mr. Jacobson has not disputed what Mr. Peters communicated to the 911 operators. The police report also states that the officers showed the guns to Mr. Peters and that Mr. Peters confirmed that Mr. Jacobson brandished both weapons at him. (Id., Ex. A). Again, Mr. Jacobson

ORDER - 5

1 does not dispute this evidence, except for his evasive statements about not sticking a gun in anyone's face or ever pointing a "replica of a gun" at anyone.[1] (See Jacobson Decl.). Finally, although the parties dispute how he did it, the parties do not dispute that Mr. Jacobson did in fact disable the tow truck. Mr. Jacobson's declaration thus does not create an issue of fact on the question of whether officers had probable cause to arrest him for malicious mischief.

Because the facts alleged, even when construed in the light most favorable to Mr. Jacobson, do not show that Officer Brooks' conduct violated Mr. Jacobson's Fourth Amendment rights, Officer Brooks is entitled to qualified immunity.[2] The Court therefore grants summary judgment in favor of Officer Brooks on Plaintiffs' Fourth Amendment claim.

In their response, Plaintiffs request an "affirmative finding that probable cause did not exist for Plaintiff's arrest." To the extent that this is a cross-motion for summary judgment on this issue, it is denied.

### 2.    **Fourth Amendment — Illegal Search**

In his response, Plaintiff states that in addition to his arrest, the search of his home violated his "Fourth Amendment right to privacy." Defendants assert that the search was legal as "a protective sweep of the premises [undertaken] to ensure their own safety." Defendants point out that Plaintiff has not sued the police officers who conducted the allegedly illegal search of his house. The police report indicates that Sgt. Seuberlich, and Officers Hensley and Potts cleared the residence, not Officer Brooks. Plaintiff has not presented any evidence suggesting that it was Officer Brooks who

---

[1] Mr. Jacobson's declaration is particularly informative in terms of what it does not say. He does not state in his declaration that he did not point a real gun at Mr. Peters. He does not say that he did not threaten to shoot Mr. Peters. He also does not challenge the fact that Mr. Peters called 911 and reported to the police that Mr. Jacobson had threatened him with a gun. Mr. Jacobson's declaration therefore fails to raise an issue of fact about whether he pointed a real gun at Mr. Peters or whether Mr. Peters reported to a 911 operator that Mr. Jacobson had threatened him with a gun. Mr. Jacobson's generalized denial of all assertions in Defendants' motion does not create a genuine issue of material fact on these issues.

[2] Defendants also argue that Officer Brooks deserves state law qualified immunity. But Plaintiffs have not alleged a state false arrest claim against Officer Brooks. The Court therefore declines to reach this issue.

ORDER - 6

conducted the search. The Court therefore dismisses Plaintiffs' illegal search claims against Officer Brooks.[3]

### 3. Fourth Amendment — JEJ

Officer Brooks also asserts qualified immunity in response to Plaintiffs' claim that he violated JEJ's Fourth Amendment rights by taking JEJ's statement. Plaintiffs' response does not address this point. The police report documenting Officer Brooks' interaction with JEJ states that Officer Brooks read JEJ his Miranda rights, including the juvenile warnings, and that JEJ verbally waived those rights. Plaintiffs have not contested this evidence. JEJ provided Officer Brooks with a written statement detailing his contact with other students. (Jolley Decl., Ex. D & H).

Because JEJ waived his Miranda rights and provided a written statement, there is no merit to Plaintiffs' claim that Officer Brooks' interview of JEJ was somehow illegal or unconstitutional. The Court therefore GRANTS summary judgment in favor of Officer Brooks and dismisses this claim.

### 4. Fourteenth Amendment

As part of their § 1983 cause of action, Plaintiffs also allege violations of the Fourteenth Amendment. Plaintiffs allege that Defendants' actions constitute a depravation of liberty without due process of law and a violation of the right to equal protection of the laws. (Am. Comp. ¶ 116). In their motion for summary judgment, Defendants only mention the substantive due process claim.

The Court dismisses Plaintiffs' substantive due process claim against these Defendants. As the Supreme Court has explained, where a particular amendment provides an "explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims." Graham v. Connor, 490 U.S. 386, 395 (1989); Armandariz v. Penman, 75 F.3d 1311, 1325-26 (9th Cir. 1996). Because Plaintiffs' allegations implicate the unreasonable search and seizure provisions of the Fourth Amendment, their claims should be analyzed under that Amendment and not the more generalized substantive due process protections of the Fourteenth Amendment.

---

[3] The Court does not address the underlying issue of whether the search itself was legal.

ORDER - 7

**B.     Municipal Liability**

A municipality may only be held liable for § 1983 damages if the plaintiff shows that a municipal policy or custom caused the constitutional injury. Bd. of the County Comm'nrs v. Brown, 520 U.S. 397, 403 (1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal liability], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985).

Plaintiffs have not alleged or offered any evidence showing any custom or policy that caused the alleged constitutional deprivation. Plaintiffs do state in their response that Defendants' motion for summary judgment is an "Official Statement" of the City of Bothell and that it was submitted to the Court in accordance with the "Official Policy" of the City. Plaintiffs also suggest that by filing the motion for summary judgment, the City somehow waived its right to argue that there is no municipal liability here. (Pls.' Resp. at 2).

Plaintiffs assertions do not address the municipal liability doctrine. The City did not waive its right to claim that there was no municipal liability by filing a motion with this Court. Because Plaintiffs have not offered any evidence suggesting a municipal policy or custom that caused a constitutional deprivation, the Court grants summary judgment in favor of Defendants on this issue and dismisses Plaintiffs' § 1983 claim against the City of Bothell.

**IV.     Summary Judgment on Plaintiffs' § 1985 Claim**

Plaintiffs have alleged a cause of action under 42 U.S.C. § 1985. Section 1985 has three distinct sub-parts which all address separate types of unlawful activity. Plaintiffs have not made clear under which part they are proceeding. Defendants assume that Plaintiffs are proceeding under § 1985(3). But Plaintiffs allege that Mr. Jacobson is an "officer of the United States" "within the meaning of § 1985(1)" because he is a lawyer licensed to practice in multiple federal jurisdictions (Am. Compl. ¶ 145; Pls.' Resp. at 3) and because he has been working with the FBI and Department of Justice ("DOJ") regarding the investigation and resolution of "certain crimes." (Am. Compl. ¶

ORDER - 8

146). Plaintiffs also allege that Defendants have interfered with Plaintiff's "lawful duties and while engaged in the lawful discharge thereof, and injured Plaintiff's person and property so as to molest, hinder or impede Plaintiff in the discharge of his official duties." (Am. Compl. ¶ 150). Because Plaintiffs' allegations in their Complaint suggest that they are pursuing a claim under 1985(1), the Court analyzes Plaintiffs' claim under that subsection.

Section 1985(1) provides as follows:

> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1985(1)'s protections extend exclusively to the benefit of federal officers. Canlis v. San Joaquin Sheriff's Posse Comitatus, 641 F.2d 711, 717 (9th Cir. 1981). Mr. Jacobson asserts that he is a "federal officer" because he is an officer of the Court and because he has been working with the FBI and DOJ regarding several investigations related to this case.

On its face, § 1985(1) relates only to federal officers and federal office holders. Courts have held that non-federal officers, including judges, police officers, and county health board members, are not "federal officers" for the purposes of § 1985(1). See, e.g., Canlis, 641 F.2d at 718 (officers of county sheriff's department lacked standing); Town of Brookline v. Operation Rescue, 762 F. Supp. 1521, 1523 (D. Mass. 1991) (city officials and police officers lacked standing); Baron v. Carson, 410 F. Supp. 299, 300 (N.D. Ill. 1976) (county health board member lacked standing); see also Morast v. Lance, 807 F.2d 926, 929 (11th Cir.1987) (holding that officer at a national bank lacked standing under § 1985 even though the bank was heavily regulated by the federal government); but see Lewis v. News-Press & Gazette, Co., 782 F. Supp. 1338, 1342-43 (W.D. Mo. 1992) (concluding that state court judge was a "federal officer" for the purposes of § 1985(1) because he had a quasi-federal role and because the case arose out of his interpretation of federal constitutional law).

ORDER - 9

The Court concludes that Mr. Jacobson is <u>not</u> a federal officer for the purposes of § 1985(1). Mr. Jacobson has not cited, and the Court has not found, any legal support for his proposition that he is a "federal officer" by virtue of his relationship with the FBI or DOJ, or because he is an attorney licensed to practice in federal jurisdictions. He is not employed by the federal government, and has not alleged or presented any evidence showing that he is authorized to perform any official federal duties. The Court therefore dismisses his § 1985(1) claim.

To the extent that they are attempting to assert a claim under the other subsections, Plaintiffs may not do so. Section 1985(2) protects an individual's right to access state and federal courts. <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 909 (9th Cir. 1993). Plaintiffs have not alleged any facts that suggest they are pursuing a claim under this subsection. And to make out a claim under section 1985(3), Plaintiffs would have to show that defendants conspired to deprive them of their constitutional rights because of race or class-based, invidiously discriminatory animus. <u>See</u> <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992). Although Plaintiffs have alleged that Mr. Jacobson is "disabled" as defined by the Americans with Disabilities Act, Plaintiffs have not alleged or presented any evidence suggesting that Defendants' actions were motivated by an intent to discriminate against Mr. Jacobson because of his disability. Any claims under these other subsections are therefore dismissed.

**V.     Summary Judgment on Plaintiffs' State Law Claims**

Defendants also request that the Court dismiss Plaintiffs' remaining state law claims against them. Plaintiffs brought state law claims for wrongful repossession, infliction of emotional distress, defamation, breach of contract, conversion, trespass to chattels, and interference with business relations. It is unclear whether these causes of action are directed at the City of Bothell or Officer Brooks or are directed solely at other defendants. Some of them — Wrongful Repossession, Conversion, and Trespass to Chattels — mention Officer Brooks or the City of Bothell.

Plaintiffs have not argued that these claims should survive and have failed to offer any evidence suggesting that these claims have merit against these Defendants. The Court therefore

dismisses Plaintiffs' state and common law claims as they relate to the City of Bothell and Officer Brooks.[4] See Local CR 7(b)(2) ("If a party fails to file papers in opposition to a motion, such failure may be considered by the Court as an admission that the motion has merit.").

**CONCLUSION**

Because Officer Brooks is entitled to qualified immunity, the Court GRANTS summary judgment in favor of Officer Brooks on Plaintiffs' § 1983 claims regarding Mr. Jacobson's arrest and the interview of JEJ. The Court GRANTS summary judgment in favor of Officer Brooks for any claim arising out of the search of the Jacobson home because Officer Brooks was not the officer who searched the home. The Court also GRANTS summary judgment in favor of the City of Bothell on Plaintiffs' Fourth Amendment claims because Plaintiffs have not shown any constitutional violation arising from a municipal policy or custom. And the Court DISMISSES Plaintiffs' substantive due process claims because they address the same alleged violations as Plaintiffs' Fourth Amendment claims. Finally, the Court DISMISSES Plaintiffs' state law claims and their FDCPA claim against these Defendants.

However, Defendants have failed to move on all of Plaintiffs' federal claims against the City of Bothell and Officer Brooks. In addition to the claims mentioned above, in their Amended Complaint, Plaintiffs raised Second Amendment, Fifth Amendment, and Equal Protection claims against these Defendants. Because Defendants' motion does not address these claims, Plaintiffs case against these Defendants cannot not be dismissed in its entirety.

//
//
//
//
//

---

[4] The Court also dismisses, at Defendants' request and for the same reasons discussed above, Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") claim as to these Defendants.

ORDER - 11

1          Defendants motion also does not address Plaintiffs' § 1981 or Fair Housing Act claims.  The
2  Court already dismissed the § 1981 claim as to all defendants (Dkt. No. 148); the Fair Housing Act
3  claim is not directed at Officer Brooks or the City of Bothell.  These additional causes of action are
4  therefore DISMISSED as to Officer Brooks and the City of Bothell.
5          The clerk is directed to provide a copy of this order to all counsel of record.
6     Dated: March 2nd, 2007.

*[signature]*

Marsha J. Pechman
United States District Judge

ORDER - 12